Dudley, 18 B. Mon. 722, that the act of congress which authorizes state courts to admit aliens to become citizens does not describe them as courts of general common law jurisdiction, but as courts having common law jurisdiction. It would be a singular construction of the act of congress to hold that the power of naturalization by the probate court cannot be exercised, unless its jurisdiction be shown to apply to all questions arising at common law. No such rule is sustainable. On the contrary, if the jurisdiction exercised by the probate judge be declared to be a common law power in the constitution, and it is, in fact, an appropriate power to the object specified, there is no room for doubt on the subject. But it is said the probate court must have a seal and clerk, or prothonotary. The seal is provided by law. And every probate judge has power to appoint a deputy clerk or clerks, who shall take the oath, or oaths, required; and the judge is required to take security from them for the faithful performance of the duties of his deputy, or deputies.

It is said in Ex parte Cregg [Case No. 3,-380] that a court of record without any clerk or prothonotary, or other recording officer distinct from the judge, is not competent to receive an alien's preliminary declaration. If this be admitted, it does not affect the question, for the probate judge has authority by law to appoint a deputy clerk or clerks, who are required to make the records; so that there is not only a clerk, but a recording officer duly appointed in the case under consideration.

The objection that the probate judge is his own clerk, and that he cannot discharge the duties of judge and clerk at the same time, is an exceedingly technical objection, and is without substance. The law authorizes the judge of probate to appoint one or more deputy clerks. The deputy clerk discharges his duty under the direction of the judge, and is subject to his order in the same way as a clerk of a court appointed in the ordinary mode by the judge. The duties of the clerks are defined by law, and, this being the case, of what importance is it, whether he is the deputy or principal clerk? In either capacity he acts under the probate judge, and is responsible for the performance of his duties. In Ex parte Gladhill, 8 Metc. (Mass.) 171, the court said: "It might be urged with some plausibility, that if the judge is specially vested by law with the clerical authority, the court has a clerk within the letter and equity of the statute." But the statute of the state has expressly authorized the judge of probate to appoint one or more deputies, and in the language of the supreme court of Massachusetts, above cited, "the requisition in the act of congress, that the court shall have a clerk or prothonotary, means, I think, not that the court shall have an officer denominated clerk or prothonotary: but a recording officer, char-

ged with the duty of keeping a true record of its doings, and afterward of authenticating them."

It has been said that a probate court is a court of ecclesiastical, and not common law, jurisdiction, and is not, therefore, such a court as the act of congress authorizes to naturalize aliens. Strictly speaking, we have no ecclesiastical courts in this country. Such courts in the English law are held by the king's authority, as supreme governor of the church for matters which chiefly concern religion. We have probate and other courts which partake somewhat of the nature of ecclesiastical courts; but they are regulated by statutory provisions and the principles of the common law. It is enough that the constitution of the state of Ohio declares that the "court of probate shall be a court of record," and it is so in fact, and in law, as it appears to me, although some of its powers are not founded on common law.

I think that the probate court has jurisdiction under the act of congress, to naturalize aliens, and that the declaration of Matthew Smith has been made in due form, and that on complying with the remaining requisitions of the act of congress, the final certificate of citizenship may be granted to him.

———

SMITH, Ex parte. See Case No. 2,784.

SMITH, Ex parte. See Case No. 12,993.

SMITH, In re. See Case No. 1,868.

———

## Case No. 12,970.

### In re SMITH.

[Nowhere reported; opinion not now accessible.]

———

## Case No. 12,971.

### In re SMITH.

[2 Ben. 113;[1] 1 N. B. R. 243 (Quarto, 25).]

District Court, S. D. New York. Jan., 1868.

BANKRUPTCY — CHOICE OF ASSIGNEE — DUTY OF REGISTER—CHANGE OF REGISTER—NOTICE OF OBJECTION TO PROOF OF DEBT.

1. It is incumbent upon registers in no manner to interfere with or influence, directly or indirectly, the choice of an assignee by creditors.

[Cited in Re Wetmore, Case No. 17,466.]

2. The policy of the bankruptcy act [of 1867 (14 Stat. 517)] is to give to the creditors, in the first instance, a free, deliberate, unbiased choice of the assignee.

3. Where creditors applied to have the proceedings sent before another register than the one to whom the case had been referred, on the ground that the register had interfered in the choice of an assignee, the court granted the application, without, however, questioning the motives of the register in what he had done, but because the creditors, who had made affidavits in support of the application, and their

———

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]